O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELEAZOR G. DUARTE, | ) NO. EDCV 12-01888-MAN |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

Plaintiff filed a Complaint on November 7, 2012, seeking review of a decision by the Social Security Commissioner ("Commissioner") that as of June 1, 2007, plaintiff ceased to be eligible for a period of disability ("POD") and disability insurance benefits ("DIB"). On December 18, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on October 1, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action. (*See* Fed. R. Civ. P. 25(d).)

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On April 16, 2001, plaintiff filed an application for a POD and DIB alleging an inability to work since March 12, 2001. (Administrative Record ("A.R.") 25, 38.) By decision dated September 18, 2002, Administrative Law Judge Richard D. Wurdeman ("ALJ Wurdeman") determined that plaintiff's severe impairment of "herniated dis[cs] at L5-S1, L4-5 and L3-4 with lower extremity radiculopathy, more on the left than the right, and chronic low back pain" met the criteria of Medical Listing 1.04A.[2] (A.R. 280.) Accordingly, ALJ Wurdeman determined, *inter alia*, that plaintiff was entitled to a POD and DIB beginning on March 12, 2001, the alleged onset date. (*Id.*)

Following ALJ Wurdman's favorable disability determination, the Social Security Administration (the "SSA") conducted a continuing disability review[3] of plaintiff's case and, on June 29, 2007, found that plaintiff had medically improved as of June 1, 2007. (A.R. 25, 287-91.) The SSA determined that plaintiff's benefits should cease on the last day of August 2007. (A.R. 283.)

---

[2] Listing 1.04A states in relevant part:

*Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
With:
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

[3] When a claimant has been granted benefits, his "continued entitlement to such benefits must be reviewed periodically." 20 C.F.R. § 404.1594(a); *see also* 20 C.F.R. § 404.1589 ("After we find that you are disabled, we must evaluate your impairment(s) from time to time to determine if you are still eligible for [payments based on disability]"). To accomplish this, the SSA engages in "continuing disability reviews," which vary in frequency. 20 C.F.R. § 404.1589; Flaten v. Sec'y of Health and Hum. Servs., 44 F.3d 1453, 1460 (9th Cir. 1995). Because a presumption of continuing disability arises once a claimant has been identified as disabled, the Commissioner has the burden of producing evidence to meet or rebut the presumption. *See* Bellamy v. Sec'y of Health and Hum. Servs., 755 F.2d 1380, 1381 (9th Cir. 1985).

Plaintiff requested reconsideration of the SSA's determination. (A.R. 294-96.)

After a disability hearing by a Disability Hearing Officer (A.R. 25, 364-75), the "[SSA's] determination was upheld upon reconsideration" (A.R. 25, 311-13). Plaintiff appealed this determination. (A.R. 316.)

On January 13, 2010, plaintiff, who was represented by an attorney, appeared and testified at a hearing before Administrative Law Judge Jay E. Levine (the "ALJ"). (A.R. 555-74.) Vocational expert Abby May also testified. (*Id.*)

On March 17, 2010, the ALJ issued an unfavorable decision, finding, *inter alia*, that plaintiff had medically improved as of June 1, 2007. (A.R. 25-36.) The Appeals Council denied plaintiff's request for review of the ALJ's decision. (A.R. 10-13). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that at the time of the September 18, 2002 favorable decision finding plaintiff to be disabled (the comparison point decision (the "CPD")), plaintiff had the impairment of "herniated discs at L5-S1, L4-5 and L3-4 with lower extremity radiculopathy and chronic low back pain," which "was found to meet section 1.04A of 20 C.F.R. Part 404, Subpart P, Appendix 1." (A.R. 26-27.) The ALJ also found that "[t]hrough June 1, 2007, the date [plaintiff]'s disability ended, [plaintiff] did not engage in substantial gainful activity. (A.R. 27.)

As of June 1, 2007, the ALJ found that the "medical evidence establishes that . . . [plaintiff] had the . . . medically determinable impairment [of] mechanical low back pain," which is "severe" (A.R. 27.) The ALJ also found that "[s]ince the end of 2007, [plaintiff] has also had the . . . medically determinable impairments [of] diabetes mellitus and high cholesterol," which

are "nonsevere."[4] (*Id.*) Notwithstanding these severe and nonsevere impairments, the ALJ found that since June 1, 2007, "[plaintiff] did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." (A.R. 28; citing 20 C.F.R. 404.1525, 404.1526.) The ALJ noted that "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does evidence show medical findings that are the same or equivalent to those of any listed impairment." (*Id.*) Further, the ALJ specifically noted that "Listing 1.04A is not met because there was no evidence of motor loss and straight[-]leg raising was negative at two orthopedic consultative examinations." (*Id.*)

The ALJ determined that "[m]edical improvement occurred as of June 1, 2007." (A.R. 29.) Specifically, the ALJ found that:

> The medical evidence supports a finding that, as of June 1, 2007, there had been a decrease in medical severity of the impairment present at the time of the CPD. As indicated above, [plaintiff] was found to have herniated discs at L5-S1, L4-5 and L3-4 at the time of the CPD. The objective diagnostic evidence shows that [plaintiff] had a disc bulge only at the L5-S1 level as of June 1, 2007. On August 2, 2004, a magnetic resonance imaging [("MRI")] study of the lumbar spine revealed a broad based right asymmetrical posterior disc bulge at the L5-S1 level with a mild right neural foraminal encroachment without evidence of left-sided neural foraminal stenosis or direct encroachment on neural structures, but no disc bulge was shown at any other level . . . . On March 10, 2008, a MRI study of the lumbar spine showed a broad-based disc bulge at the L5-S1 level not indenting the thecal sac extending to the left and right far lateral spaces resulting in no significant canal stenosis and mild left and right lateral neural foraminal stenosis, but no significant

---

[4] The ALJ also determined that "there was no medically determinable mental impairment as of[, or after,] June 1, 2007." (A.R. 27-28.)

> disc bulge or protrusion was identified at any other level . . . .

(A.R. 29; internal citations omitted.)  Accordingly, the ALJ concluded that plaintiff's "medical improvement is related to the ability to work[,] because . . . as of June 1, 2007, [plaintiff]'s CPD impairments no longer met or medically equaled the same listing that was met at the time of the CPD" -- *to wit*, Listing 1.04A.  (*Id.*)

After reviewing the record, the ALJ determined that as of June 1, 2007, plaintiff had the residual functional capacity ("RFC") to perform "a range of light work" as defined in 20 C.F.R. § 404.1567(b) and SSR 83-10.  (A.R. 29.)  Specifically, the ALJ determined that:

> [plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; he is unlimited with respect to pushing and/or pulling, other than as shown for lifting and/or carrying; and he can occasionally perform climbing, balancing, stooping, kneeling, crouching, and crawling.

(*Id.*)  The ALJ also found that plaintiff was unable to perform his past relevant work as a farm field worker; however, having considered plaintiff's age,[5] education,[6] work experience, and RFC as of June 1, 2007, the ALJ found that other jobs exist in the national economy that plaintiff could perform, including sorter/grader, Mexican food maker, and assembly machine tender.  (A.R. 34-35.)  Accordingly, the ALJ concluded that "[plaintiff]'s disability ended as of June 1, 2007."  (A.R. 36.)

---

[5] The ALJ determined that "[o]n June 1, 2007, [plaintiff] was a younger individual age 18-49."  (A.R. 34; citing 20 C.F.R. § 404.1563.)

[6] The ALJ found that "[plaintiff] has a limited education and is able to communicate in English."  (A.R. 34; citing 20 C.F.R. § 404.1564.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ erred in finding that plaintiff's disability ceased on June 1, 2007 (Joint Stipulation ("Joint Stip.") at 6), because "[t]he ALJ's determination that medical improvement exists is not supported by the medical evidence" (*id.* at 9).

"Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in [his] favor[, and the Commissioner] bears the burden of producing evidence sufficient to rebut the presumption of continuing disability." *See* Bellamy, 755 F.2d at 1381. Benefits cannot be terminated unless substantial evidence demonstrates medical improvement in the claimant's impairment such that the claimant becomes able to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594; Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983).

Medical improvement is defined as "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594a(c). To determine whether there has been medical improvement, the claimant's current condition must be compared with the claimant's condition at the time of the most recent favorable determination or decision. 20 C.F.R. § 404.1594a(b)(1). The most recent favorable determination or decision is the latest final determination or decision involving a consideration of the medical evidence and whether the claimant was disabled or continued to be disabled.   20 C.F.R. § 404.1594a(c)(1).

In assessing whether plaintiff's condition medically improved, the ALJ compared plaintiff's medical condition at the time of the March 17, 2010 decision to his medical condition at the time of the September 18, 2002 CPD, which was the last date on which plaintiff received a favorable disability decision. (A.R. 25-29.) After carefully reviewing the record as a whole, the Court concludes that the ALJ's finding of medical improvement in plaintiff's condition is supported by

substantial evidence.

In the September 18, 2002 CPD, ALJ Wurdeman determined that, as of March 12, 2001, plaintiff was disabled, because his impairment of "herniated discs at L5-S1, L4-5 and L3-4 with lower extremity radiculopathy and chronic low back pain" met Listing 1.04A of 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 25-27.) ALJ Wurdeman based his favorable disability determination on evidence that plaintiff had herniated disks at L5-S1, L4-5, and L3-4 with lower extremity radiculopathy as well as positive straight-leg raising tests in both the sitting and supine positions. (A.R. 279-80.)

In assessing the extent to which plaintiff's condition improved since the September 18, 2002 CPD, the ALJ relied on: orthopedic consultative examinations from 2007 and 2008, showing negative straight-leg raising tests and no evidence of motor loss; and MRI studies from 2004 and 2008, showing that plaintiff had a disc bulge only at the L5-S1 level. (A.R. 29.)

Plaintiff contends that the ALJ erred in finding that plaintiff's medical condition improved, because plaintiff's straight-leg raising tests have all been "similar," and plaintiff's objective diagnostic evidence, *e.g.* MRIs, demonstrate the same results as previously.[7] (Joint Stip. at 9.) Contrary to plaintiff's assertion, plaintiff's straight-leg raising tests have not all been similar. As noted by ALJ Wurdeman in his September 18, 2002 CPD, treatment notes from treating orthopedic surgeon Ronald Portnoff, M.D., dated October 30, 2000, and May 2, 2001, indicate, *inter alia*, positive straight-leg raising tests and diminished motor strength. (A.R. 279; A.R. 183 (05/02/01 treatment note - noting "[s]traight[-]leg raising produced pain the low back at 60 [degrees]");

---

[7] Plaintiff also claims that the ALJ erred in citing "the more recent examinations with respect to the range of motion to determine medical improvement," because "these [findings] were the same findings from the prior medical examinations on which the CPD based a finding of disability." (Joint Stip. at 9-10.) Contrary to plaintiff's assertion, however, the ALJ did not rely upon the more recent findings regarding plaintiff's range of motion to support his finding of medical improvement. Rather, the ALJ relied upon plaintiff's negative straight-leg raising tests and the improvement in the objective diagnostic findings to support the finding that plaintiff's condition had medically improved. Thus, plaintiff's claim is unavailing.

8

A.R. 192 (10/30/00 treatment note - noting "[s]traight[-]leg raising produce[d] pain in the low back at 60 [degrees]").) In addition, ALJ Wurdeman noted that a "May 16, 2002 workers' compensation qualified medical evaluation by orthopedic surgeon Nick Sharma, M.D., . . . also indicated positive straight-leg raising in both the sitting and supine positions . . . ." (A.R. 279; A.R. 269 (05/16/02 treatment note – noting "[s]traight[-]leg raising [wa]s positive in the sitting and supine positions at 60 degrees bilaterally").) In contrast, and as properly noted by the ALJ in his March 17, 2010 decision, consultative orthopedic examinations dated May 23, 2007, and March 27, 2008, reveal negative straight-leg raising tests and no evidence of motor loss. (A.R. 28, 32-33.) Specifically, orthopedic consultative examiner Herbert E. Johnson, M.D., noted that "[s]traight-leg raising, both in the seated and supine positions, [wa]s negative to 75 [degrees], bilaterally, limited by tightness." (A.R. 408.) In addition, orthopedic consultative examiner Zaven Bilezikjian, M.D., noted that "[s]traight[-]leg raising, both in the seated and supine positions, [wa]s negative, bilaterally."[8] (A.R. 454.)

Further, like plaintiff's straight-leg raising tests, the objective diagnostic evidence shows a significant improvement in plaintiff's condition. In the September 18, 2002 CPD, ALJ Wurdeman noted that "[a] February 1991 CT scan showed disk bulging at L5-S1, L4-5 and L3-4 as well as contusions to the coccyx area." (A.R. 279.) However, as the ALJ properly noted in his May 17, 2010 decision, more recent "objective diagnostic evidence show[ed] [plaintiff] had a disc bulge *only* at the L5-S1 level as of June 1, 2007." (A.R. 29; emphasis added.) Specifically, the ALJ noted that "on August 2, 2004, a magnetic resonance imaging (MRI) study of the lumbar spine revealed a broad-based right asymmetric posterior disc bulge at the L5-S1 level with a mild right neural foraminal encroachment . . . , but no disc bulge was shown at any other level." (*Id*; citation omitted.) Further, a March 10, 2008 MRI study of the lumbar spine "showed a broad-based disc bulge at the L5-S1 level not indenting the thecal sac extending to the left and right far lateral spaces resulting in no significant canal stenosis and mild left and right lateral neural

---

[8]   Significantly, because plaintiff does not have a positive straight-leg raising test (sitting and supine), he cannot meet the criteria of Listing 1.04A.

foraminal stenosis, but no significant disc bulge or protrusion was identified at any other level." (*Id.*) Clearly, the presence of a disc bulge at only the L5-S1 level is evidence of an improvement in plaintiff's condition.

Accordingly, contrary to plaintiff's contention, there is substantial medical evidence that supports the ALJ's finding that plaintiff's condition medically improved as of June 1, 2007. Thus, no reversible error occurred.

## CONCLUSION

For all of the foregoing reasons, the Court finds that neither reversal of the Commissioner's decision nor remand is warranted. Accordingly, IT IS ORDERED that the Commissioner's decision denying benefits is AFFIRMED, and that Judgment shall be entered affirming the decision of the Commissioner.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 5, 2013

*Margaret A. Nagle*
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE